706 P.2d 389

**The STATE of Arizona, Appellee,**

v.

**David TAMPLIN, Jr., Appellant.**

**No. 2 CA–CR 3588.**

Court of Appeals of Arizona, Division 2, Department A.

April 24, 1985.

Review Denied Sept. 24, 1985.

378

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Crane McClennen, Phoenix, for appellee.

Frederic J. Dardis, Pima County Public Defender by Michael B. Bernays, Tucson, for appellant.

## OPINION

BIRDSALL, Presiding Judge.

The appellant was convicted of child abuse by criminal negligence, a lesser-included offense of the child abuse with which he was charged. The jury also found the crime was of a dangerous nature. He was sentenced to a presumptive six-year term in prison.

We must answer two questions on appeal:

1. Was it fundamental, reversible error to fail to give a limiting instruction when his statement was admitted for impeachment?

2. Was it error for the trial court to allow the jury to find that the lesser-included offense was of a dangerous nature?

We affirm.

The appellant was living with the mother of the victim, a boy, age two years and nine months. On July 12, 1983, the mother left the victim and their two-month-old daughter with the appellant while she attended a nutrition program. When she returned two hours later, the appellant was applying a medicinal cream on the victim's bottom and lower back. She discovered that the victim had been seriously burned. The appellant told her that there had been an accident in the kitchen and the boy had been burned from spilled hot water. The appellant later told the mother that he had put the victim in the bathtub without checking the water; because it was too hot, it had burned the youngster. This was the same account of the incident as his subsequent testimony.

The mother immediately took the boy to the Family Practice Clinic at the University of Arizona Health Sciences Center. His injuries were diagnosed as second-degree burns, which would take three to six seconds in water at temperatures of 136 to 140 degrees Fahrenheit to develop. The mother told the doctors the story of water spilling in the kitchen because she did not want to admit she had been away from the home. Because of the burn pattern, the doctors did not believe her and eventually the police were notified.

The appellant's statement to the police in which he said the victim was standing in the tub and he made him sit down was suppressed because of a *Miranda* violation, although it was found to be voluntary and thus admissible for purposes of impeachment.

The jury was properly given three forms of verdict: not guilty, guilty of intentional or knowing child abuse, and guilty of child abuse done with criminal negligence. They returned the latter verdict and also found that the offense involved the use of a dangerous instrument, to wit, hot water. They were properly instructed that criminal negligence means:

"With respect to a result or to a circumstance described by a statute defining an offense, that a person fails to perceive a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that a reasonable person would observe in the situation."

We turn now to the issues presented.

## LIMITING INSTRUCTION

During appellant's cross-examination, he was asked about the statement he had given the police. Although he testified that he did not remember what he had said, he did admit he had lied to the detective. In rebuttal, the detective testified to the contents of the statement. The statement was admissible only for impeachment and not as substantive evidence. *State v. Routhier*, 137 Ariz. 90, 669 P.2d 68 (1983), cert. denied, 464 U.S. 1073, 104 S.Ct. 985, 79 L.Ed.2d 221 (1984). The jury should have been instructed as to the limited use the jury could make of the evidence. *Routhier*, supra. However, no request for such an instruction was made, so we must determine whether the failure to give such an instruction was fundamental error. We hold that it was not. Although no Arizona decision has addressed this precise question, several federal circuits have. In *Stevens v. United States*, 256 F.2d 619 (9th Cir.1958), the court held, without explaining its reasoning, that error, if any, was waived and there was no plain error. And in *Benson v. United States*, 402 F.2d 576 (9th Cir.1968), although finding plain error, the court held, citing *Stevens*, that failure to give a limiting instruction is usually not plain error. Nevertheless, several federal cases have found plain error. See *United States v. Ragghianti*, 560 F.2d 1376 (9th Cir.1977); *United States v. Lipscomb*, 425 F.2d 226 (6th Cir.1970); *Bartley v. United States*, 319 F.2d 717 (D.C.Cir.1963). We find that whether the failure to give such an instruction is, under the federal termi-

nology, "plain" error, turns upon the facts of the case.

Thus, in *Benson*, supra, the court said that if the government had done no more than cross-examine on those matters in the statement relating to the defendant's testimony, it would have found no error. However, the statement which was introduced in that narcotics prosecution admitted involvement in 39 other narcotics transactions.

And in *Bartley*, supra, the court found that the statement in question was *critical* to the assessment of the defendant's claim of self-defense. Likewise, in *Lipscomb*, the court said the failure to give a limiting instruction is generally plain error when the government's case is weak and the statement is *extremely damaging*. In *Lipscomb* the impeachment evidence was said to have established in large measure the substantive elements of the crime. And, finally, in *Ragghianti*, the court noted that alibi was the sole issue in the case and that issue had to stand on the question of credibility.

In the instant case the appellant's own testimony admitted facts from which the jury could find, beyond a reasonable doubt, criminal negligence. The statement added nothing except that it might have been used to find knowing or intentional conduct. The jury did not make such a finding. While it is true that the statement caught the appellant in another lie from which the jury may have drawn an inference of guilt, he had already been shown to be a liar. The statement was neither critical to the prosecution nor extremely damaging. No fundamental error occurred.

## THE DANGEROUS NATURE

The appellant contends that to qualify as a dangerous nature offense, the use of a dangerous instrument must be done either knowingly or intentionally. He contends that the reckless conduct involved in child abuse by criminal negligence cannot result in a dangerous nature offense. He analyzes certain provisions of our criminal code in his reasoning. He begins with

A.R.S. § 13–604(F) (Supp.1984), which provides, in part:

"A person who is at least eighteen years of age or who has been tried as an adult and who stands convicted of a class 4, 5 or 6 felony involving the intentional or knowing infliction of serious physical injury or the use or exhibition of a deadly weapon or dangerous instrument without having previously been convicted of any felony shall be sentenced to imprisonment for . . . ."

He then cites the definition of dangerous instrument found at A.R.S. § 13–105(7) (Supp.1984),

"anything that under the circumstances in which it is used, attempted to be used or threatened to be used is readily capable of causing death or serious physical injury."

He then concludes that the words "used, attempted to be used or threatened to be used" carry with them the concept of intentionality. We do not agree that the word "used" carries such a concept. Surely one can use a dangerous instrument recklessly as the jury necessarily found in this case. However, be that as it may, the appellant then argues, citing A.R.S. § 13–202(A),

"If a statute defining an offense prescribes a culpable mental state that is sufficient for commission of the offense without distinguishing among the elements of such offense, the prescribed mental state shall apply to each such element unless a contrary legislative purpose plainly appears,"

that because the enhancement statute A.R.S. § 13–604(F) requires the culpable mental state of intentionally or knowingly for infliction of serious physical injury, the same requirements should attach to the use of a dangerous instrument. We do not agree. A.R.S. § 13–202 refers to statutes defining an offense. A.R.S. § 13–604(F) does not define an offense. It is clear to us that the legislature specifically meant to require that the infliction of serious physical injury had to be done intentionally or knowingly, but for the use of a dangerous instrument these mental states were not required. This makes sense because of the difference between causing serious physical injury and using a dangerous instrument. The legislature has determined that one who uses a dangerous instrument is more culpable than one who causes injury without intention or knowledge. See *State v. Venegas*, 137 Ariz. 171, 669 P.2d 604 (App.1983). We are not persuaded differently by the other arguments made concerning this alleged error.

We affirm the conviction and sentence.

HOWARD and FERNANDEZ, JJ., concur.